IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TYJUAN WATERS** | : | No. 12-295-2 |

## MEMORANDUM

PRATTER, J.                                                                                               MARCH 22, 2022

      Tyjuan Waters seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from the COVID-19 virus. He also seeks appointment of counsel for this motion. Because Mr. Waters has been vaccinated and because early release would not reflect the serious nature of his crime, the Court denies his motions.

### BACKGROUND

**I.   Mr. Waters's Motion for Counsel to File for Compassionate Release**

      Mr. Waters was involved with an armed robbery of a McDonalds at 914 South Broad Street in Philadelphia on February 12, 2012. He pled guilty to three counts, conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a), robbery which interferes with interstate commerce in violation of 18 U.S.C. § 1951(a), and using, carrying, or possessing a firearm during in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). For his role in the robbery, the Court sentenced Mr. Waters to 262 months of imprisonment, 5 years of supervised release, a $1,500 fine, and a $300 special assessment. Doc. No. 71. Mr. Waters is presently serving his sentence at the Federal Correctional Institute at Schuylkill ("FCI Schuylkill").

As of May 2021, Mr. Waters was 44 years old. Doc. No. 182, at 4. He has a history of hypertension, a Vitamin D deficiency, and prediabetes.[1] *See* Doc. No. 186-1, at 1, 3, 20. Mr. Waters received the Pfizer COVID-19 vaccine on February 10, 2021. Doc. No. 182, at 5; Doc. No. 186-1, at 27. He tested positive for COVID-19 six days later but recovered. Doc. No. 182, at 5; Doc. No. 186-1, at 26. He received his second dose of the Pfizer vaccine on March 3, 2021. Doc No. 182, at 5; Doc. No. 186-1, at 27. Mr. Waters now asks the Court to appoint him counsel and to grant him compassionate release.

## II. The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 22, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates. FCI Schuylkill currently houses 1,063 total inmates, 971 at the FCI and 92 inmates at the Camp. *FCI Schuylkill*, Bureau of Prisons, https://www.bop.gov/locations/institutions/sch/ (last visited Mar. 22, 2022). As of March 2022, there had been 534 inmates at FCI Schuylkill who had tested positive for COVID-19 and

---

[1] Mr. Waters adds that he suffers from obesity, high blood pressure, high cholesterol, pulmonary hypertension, and "levels of 17% arcinic [sic]." Doc. No. 181, at 2. The Government points out that Mr. Waters does not have pulmonary hypertension, which is a more specific diagnosis than general hypertension, which Mr. Waters does have. Doc. No. 182, at 4 n.1; Doc. No. 186-1, at 1.

none had died; no inmates presently have COVID-19, and only three staff members have confirmed cases. *FCI Schuylkill*, https://www.bop.gov/coronavirus/ (last visited Mar. 22, 2022)

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A).[2] Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[3] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

---

[2] At least at the time of his filing, Mr. Waters had not exhausted his administrative remedies, as he is required to do. 18 U.S.C. § 3582(c)(1)(A). Mr. Waters notes that he "began the process" and "filed to the warden . . . at FCI Schuylkill." Doc. No. 181, at 1. He appears to also note that he has appealed the warden's decision "in the regional director office." *Id.* However, the Government opposes Mr. Waters's motion and does not contest that he has exhausted his administrative remedies. The Court presumes that, by now, Mr. Waters has exhausted his administrative remedies. Thus, rather than elevating form over substance, the Court will address Mr. Waters's motion on its merits.

[3] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

3

## DISCUSSION

Mr. Waters filed for appointment of counsel to help him file a motion for compassionate release. Doc. No. 181. It is unclear whether Mr. Waters's motion is also one for compassionate release itself. Towards the end of his motion, Mr. Waters states: "I would ask this Court to allow me to file for compassionate release under 'extraordinary and compelling circumstances.'" Doc. No. 181, at 2. He then includes the medical conditions from which he suffers and states that these conditions put him at higher risk due to the COVID-19 pandemic. *Id.*

The Government opposes Mr. Waters's motion on the ground that, even if appointed counsel, Mr. Waters would not be eligible for compassionate release.

The Court agrees with the Government. Because Mr. Waters would not be eligible for compassionate release on the present record in front of the Court, it denies his motion. The Court also denies his motion for appointment of counsel.

### I. Mr. Waters Has Not Shown an "Extraordinary and Compelling" Reason for his Release

Mr. Waters expresses concern with the "current [COVID-19] outbreak throughout the federal prison system and country." Doc. No. 181, at 1. He explains that he suffers from a number of medical conditions that make him more susceptible to COVID-19 and the possibility of a severe infection. Doc. No. 181, at 2.

Demonstrating an "extraordinary and compelling" circumstance sufficient to qualify for compassionate release, however, requires "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Mr. Waters's conditions do not prevent him from caring for himself, even given the risk of COVID-19 infection.

Although Mr. Waters claims to suffer from obesity and high cholesterol, his medical records do not document either of those conditions. *See* Doc. No. 186-1. Instead, Mr. Waters presents the sole COVID-19 risk factor of hypertension. *See, e.g.*, Doc. No. 186-1, at 1. The Government points the Court to the list of risk factors that the Centers for Disease Control has identified that "can" make a person "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 22, 2022). Hypertension is included on that list under the broader heading of "heart conditions" *Id.* Mr. Waters's other documented medical conditions—prediabetes and vitamin D deficiency—are not included on the CDC's list of risk factors. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 22, 2022)

Even so, Mr. Waters was able to bring his blood pressure down and went off medication to control his hypertension in 2015. Doc. No. 182, at 4–5; Doc. No. 186-1, at 1. In other words, Mr. Waters's hypertension has not substantially impaired his ability to care for himself within the prison environment.

This is true even with the added risk of COVID-19. Mr. Waters is now vaccinated against COVID-19, having received two doses of the vaccine in February and March 2021. The Pfizer vaccine, which Mr. Waters received, has been documented as highly effective against COVID-19 and identified variants. *See, e.g., COVID-19 Study Shows mRNA Vaccines Reduce Risk of Infection by 91 Percent for Fully Vaccinated People*, Centers for Disease Control & Prevention (June 7, 2021), https://www.cdc.gov/media/releases/2021/p0607-mrna-reduce-risks.html (last visited Mar. 22, 2022). The widespread availability of COVID-19 vaccines virtually eliminates the risk of death

or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021)). Moreover, Mr. Waters has already contracted COVID-19, remained asymptomatic, and fully recovered. Doc. No. 182, at 5. In other words, his risk from COVID-19 is extremely low.

In addition, compassionate release in Mr. Waters's case would not reflect the serious nature of his crime. Mr. Waters provided both the getaway car and a 12-gauge shotgun used in the armed robbery of the McDonalds. Mr. Waters participated directly in the robbery, forcing employees into the back of the store and onto the ground with one other defendant. Mr. Waters then took the money from the safe in McDonalds. Once back in the getaway car, the three defendants led the police on high-speed chase for several blocks before colliding with another occupied car. The three defendants then fled on foot before they were finally apprehended by police. At the time of this federal offense, Mr. Waters was on probation in two other jurisdictions. For his role in this crime, Mr. Waters was sentenced to 262 months of imprisonment. As of May 2021, he had served approximately 111 months and had 17 months of credit for good conduct, totaling 128 months served. Doc. No. 182, at 3–4. That, at the time of his motion, Mr. Waters had served less than one half of his sentence for a violent crime (which also violated his probation in two other jurisdictions) is another reason to reject his motion for compassionate release.

Therefore, the Court denies his motion for compassionate release.

## II. Mr. Waters Has Not Demonstrated that Appointment of Counsel is Necessary to Present his Motion for Compassionate Release

In requesting appointment of counsel, Mr. Waters notes only that he wants the Court to appoint counsel "[due] to this serious matter." Doc. No. 181, at 2.

First, a criminal defendant does not have a Sixth Amendment right to counsel when seeking compassionate release. *United States v. Dorsey*, 520 F. Supp. 3d 681, 683 (E.D. Pa. 2021). This alone is reason to reject Mr. Waters's motion.

6

Second, courts considering a request for counsel by an indigent civil litigant apply the following factors: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to do such investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; (6) whether the case will require testimony from expert witnesses, and (7) the merits of the plaintiff's claim. *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993).

Here, the following *Tabron* factors weigh against appointing Mr. Waters counsel for his motion for compassionate release: (1) although Mr. Waters does not explain his education, literacy, or prior litigation experience, he has presented his motion adequately in his letter to the Court; (2) a motion for compassionate release does not present difficult legal issues; (3) no factual investigation is required beyond the medical records; (5) a motion for compassionate release does not turn on credibility determinations; (6) no expert testimony is required; and (7) as just discussed, Mr. Waters's motion has no merit. This is another reason to reject his motion for appointment of counsel.

Therefore, the Court denies Mr. Waters's request for appointment of counsel.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Waters's motion for appointment of counsel and for compassionate release.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

7